## SEQUATCHIE HANDLE WORKS *v.* JENNINGS.

[No. 5,273. Filed May 23, 1905.]

CONTRACTS.—*Sales.*—*Construction by the Parties.*—Where plaintiff, a broker, engaged to sell defendant's goods on commission, defendant controlling the price and receiving the full selling price, less commission, and goods were delivered under such agreement, such transaction did not constitute a sale to such broker, and a subsequent correspondence which contained some evidence that such transaction was considered a sale by the parties did not change the character of the transaction.

From Henry Circuit Court; *John M. Morris,* Judge.

Action by the Sequatchie Handle Works against Charles W. Jennings. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Barnard & Jeffrey,* for appellant.
*M. E. Forkner,* for appellee.

Robinson, J.—Suit for goods sold and delivered to appellee. Overruling a demurrer to the third paragraph of appellee's answer, the first and second paragraphs having been withdrawn, and sustaining a demurrer to appellant's reply, are assigned as errors.

The third paragraph of answer avers that appellee was a broker engaged in buying and selling handles for others; that the contract out of which the cause of action arises is in writing, and evidenced by letters between the parties, which letters are made exhibits; that appellee did not purchase of appellant any goods, but sold for it, to a New York firm, the goods sued for, at the price stated in such letters, appellee to receive five per cent. commission for his services as a broker in making the sale; and that appellant is indebted to appellee in a sum named for such commission. In the first of these letters, written by appellee November 15, 1901, he asks if appellant can furnish "750 doz. No. 3-36 pick handles," and, if so, to quote "best price f. o. b. New York." Appellant answered November 18, by saying they could furnish the handles and put them in New York for appellee at fifty cents per dozen, sixty days, less two per cent. off for cash. Appellee replied November 21, that the price quoted is "the figure we get for them, and we would not care to handle the business unless we could make a little something out of it. If you can see your way clear to allow us a commission of five per cent., you may go to work at once and finish the handles, crate them ready to ship, and we will send you shipping instructions." On November 23 appellant wrote: "We will ship the car of No. 3 pick at fifty cents per dozen, f. o. b. New York, and allow you five

per cent. commission on the business. Let us know at once what size crates to put them in, whether five or ten dozen crates. We have about 1,000 doz. No. 3 axe crooked pattern that are good stock, will sell at same terms if you can handle them." Appellee, on November 25, replied to this letter, saying: "Please enter our order for 720 doz. No. 3-36 R. R. pick handles at fifty cents per doz., less two per cent. for cash, and five per cent. commission. Packed ten dozen cases for export, and ship to S. Hoffnung & Co., New York. Mark cases (A. I. C.) London. Number cases 1,171 and up. Bill the car 'for export, lighterage free,' and take B/L in our name as shippers. Advise us at once when the car will go forward." On November 29 appellee wrote appellant to ship the same firm, in the car of pick handles, "12 doz. No. 3-36 sledge handles, large eye 13, 8x13/4 at 45c., 12 doz. No. 3-36 R. R. pick handles at 50c.," and gave packing instructions.

The letters forming the contract between the parties must be construed in connection with the allegation in the answer, which the demurrer admits to be true, that appellee was a broker engaged in buying and selling handles for other parties. The letters contain some evidences of a sale of the goods to appellee, but, construing the pleading with the exhibits, it appears that appellee was an agent for the sale of the goods. Appellee's first inquiry asks for quotation of prices delivered at New York City, not at appellee's place of business at Charleston, West Virginia. Appellant's answer gives a price and terms of payment. It would seem that appellee, even if he had thought of buying the handles when he first wrote, abandoned that intention when he received the prices, as he then wrote that the price named was all he could get out of them, and he then states "if you can see your way clear to allow us a commission of five per cent., you may go to work at once and finish the handles." A sale to appellee does not seem to have been contemplated by appellant when it wrote, in answer to this proposition,

"we will ship the car of No. 3 pick at fifty cents per dozen, f. o. b. New York, and allow you five per cent. commission on the business." In reply to this appellee ordered the handles at the price offered, and directed them to be shipped to a New York firm. The inception of the contract was in the proposition made by appellee in the letter of November 21, and the acceptance of this proposition by appellant on November 23 constitutes the substance of the contract between the parties. It seems that under this contract appellee had no authority to sell the handles at a less price than that named, and if he had sold at a greater price than quoted he would have been required to account for all he received, less the commission he agreed to take and which appellant agreed to give. Whether the contract was one of sale or of agency is to be determined from the language and by the parties. A sale of the handles to appellee does not seem to have been intended by either of the parties when the two letters, that in effect made the contract between them, were written. The intention of the parties in such a case is to be determined from the particular language used at the time the contract was entered into.

Correspondence between the parties subsequent to the shipment of the goods, and set out in the reply, contains some evidence that at that time the parties construed the contract as one of sale; but this correspondence contains some evidence also that appellant was looking to the parties to whom the goods were shipped for pay for the goods. And, taking this subsequent correspondence as a whole, we do not think it can be said that it qualified the terms of the original contract under which the goods were shipped, which the original correspondence shows to be a brokerage contract, and not a contract of sale. It is quite true that where all the elements of a sale exist it can not be made anything else by calling it a different name, but the intention of the parties must be determined from the language used at the time they made the contract. As the construction given the con-

tracts in the cases cited by counsel was controlled by the particular language used by the parties, we do not think it necessary to enter upon a discussion of those cases. As a pleading the reply was not sufficient to overthrow the contract pleaded in the third paragraph of answer.

Judgment affirmed.